CASEY JENSEN, Esq. (Bar No. 263593)
Email Address: cjensen@deconsel.com
DeCARLO & SHANLEY, a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone (213) 488-4100
Facsimile (213) 488-4180

Attorneys for Plaintiffs, CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS,<br><br>Plaintiffs,<br><br>v.<br><br>CONSTRUCTION TECHNOLOGY SPECIALISTS, INC., a New Mexico corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR:<br><br>1. DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS;<br><br>2. SPECIFIC PERFORMANCE FOR SPECIFIC MISSING REPORTS; and<br><br>3. SPECIFIC PERFORMANCE TO CONDUCT AN AUDIT |

**JURISDICTION**

1. This is a civil action to recover fringe benefit contributions, for specific performance for specific missing reports, and for specific performance to conduct an audit. This action arises and jurisdiction of the court is founded as to Section 301 of the Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185a, and Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132 and 1145.

///
///

**PARTIES AND OTHERS**

2. CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation ("CSAC") is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of California. CSAC's principal place of business is in the County of Los Angeles, State of California.

3. At all relevant times herein, the BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS were and now are fiduciaries and are duly authorized and acting trustees of those ERISA Trust Funds defined in paragraph six.

4. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are also authorized agents to act on behalf of the remaining Funds and entities (defined in paragraph nine) with respect to these delinquencies. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are sometimes collectively referred to as PLAINTIFFS.

5. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 10, are unknown at this time to PLAINTIFFS. PLAINTIFFS therefore sue the defendants by such fictitious names, and PLAINTIFFS will amend this complaint to show their true names and capacities when the same has been ascertained. PLAINTIFFS are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, either through its own conduct, or through the conduct of its agents, servants and/or employees, or in some other manner as yet unknown, and that PLAINTIFFS' damages as herein alleged were proximately caused by those defendants

6. At all relevant times Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, were and are express trusts which exist pursuant to Section 302 of the LMRA, 29 U.S.C. §186, and are multiemployer plans

within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

7. At all relevant times the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, and the Contract Administration Trust for Carpenter-Management Relations, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186.

8. At all relevant times the Carpenters-Contractors Cooperation Committee ("CCCC"), was and is a non-profit California corporation which exists pursuant to section 5(b) of the Labor Management Cooperation Act of 1978, 92 Stat. 2020 (1978), for the purposes set forth in section 302(c)(9) of LMRA, 29 U.S.C. § 186(c)(9).

9. CSAC is the administrator of Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, and assignee of the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, the Contract Administration Trust for Carpenter-Management Relations, and the Carpenters-Contractors Cooperation Committee, and the Grievance Obligation Trust Fund (collectively, the "PLANS"), and as such is a plan fiduciary within the meaning of Section 3 of ERISA, 29 U.S.C. §1002.

10. PLAINTIFFS have also been authorized to handle collection of the amounts owed to the New Mexico Retirement Trust Fund ("New Mexico Fund") which exists pursuant to section 302 of the LMRA, 29 U.S.C. §186, and is a multiemployer plan within the meaning of section 3 of ERISA, 29 U.S.C. §1002. (The New Mexico Fund is also included in the term "PLANS").

11. The duly authorized and acting trustees or directors of each of the PLANS have also assigned to CSAC all their right, title and interest in and to any and all amounts due and owing to the respective PLANS by the employer as herein

alleged.

12. Southwest Regional Council of Carpenters and its affiliated local unions ("UNIONS") affiliated with United Brotherhood of Carpenters and Joiners of America are labor organizations that are a party to the collective bargaining agreements involved.

13. At all relevant times, employer, CONSTRUCTION TECHNOLOGY SPECIALISTS, INC., a New Mexico corporation, and DOES 1 through 10 ("EMPLOYER"), was and is a contractor engaged in the construction industry within the jurisdiction of the UNIONS.

**FIRST CLAIM FOR RELIEF FOR**
**DAMAGES FOR FAILURE TO PAY**
**FRINGE BENEFIT CONTRIBUTIONS**

14. On or about the date set forth thereon, EMPLOYER made, executed and delivered to the UNION, a Carpenters Memorandum Agreement, Single Project Agreement dated July 31, 2015 ("MEMORANDUM AGREEMENT"). A true and correct copy is attached hereto, marked as Exhibit "1" and incorporated herein by reference.

15. The MEMORANDUM AGREEMENT binds EMPLOYER to the terms and conditions of the Labor Agreement between New Mexico Building Branch, Associated General Contractors and the Southwest Regional Council of Carpenters and its affiliated Local Unions of the United Brotherhood of Carpenters and Joiners of America, DATED June 1, 2014 through May 31, 2017, and any extensions, renewals or subsequent Master Labor Agreements, and the PLANS' agreements and any amendments, modifications, extensions, supplementations or renewals of the PLANS' agreements ("collectively referred to as "AGREEMENTS"). The PLANS are third party beneficiaries of the NEW MEXICO BUILDING BRANCH ASSOCIATED GENERAL CONTRACTORS and Master Labor Agreements. The

PLANS are third party beneficiaries of the AGREEMENTS and Master Labor Agreements.

15. The AGREEMENTS require EMPLOYER to pay fringe benefit contributions at the rates set forth therein for every hour worked by employees performing services covered by the AGREEMENTS, and on account of all compensation paid to employees performing services covered by the AGREEMENTS.

16. The AGREEMENTS require EMPLOYER to make the fringe benefit contributions by way of Employer Monthly Reports ("REPORTS") to the PLANS at their place of business in Los Angeles, California, on or before the 25th day of each month following the month during which the hours for which contributions are due were worked or paid. Further, the AGREEMENTS specifically provide that the venue of an action to recover delinquent fringe benefit contributions shall be in the County of Los Angeles.

17. In acknowledging both that the regular and prompt payment of employer contributions is essential to the maintenance of the PLANS, and the extreme difficulty, if not impracticability, of fixing the actual expense and damage to the PLANS when such monthly contributions are not paid when due, the AGREEMENTS provide that the amount of contractual damages to the PLANS resulting from a failure to pay contributions when due shall be presumed to be the sum of $30.00 per delinquency or 10 percent of the amount of the contributions due, whichever is greater. This amount shall become due and payable to CSAC as liquidated damages in addition to the unpaid contributions or contributions paid late.

18. EMPLOYER engaged workers who performed services covered by the AGREEMENTS and who performed labor on works of construction within the jurisdiction of the AGREEMENTS undertaken by EMPLOYER during the term of the AGREEMENTS.

19. EMPLOYER has failed to pay the fringe benefit contributions in the manner prescribed by the AGREEMENTS, and there is now due and owing to the PLANS from EMPLOYER in the amounts set forth in Exhibit "2".

20. The AGREEMENTS require EMPLOYER to pay for the expense of auditing EMPLOYER's business records if an audit by the PLANS indicates that EMPLOYER failed to report and pay all contributions.

21. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for interest on the unpaid contributions from the first of the month following the date due, at the rate prescribed by the AGREEMENTS.

22. The PLANS have conducted check stub audits, which indicate that EMPLOYER failed to report and pay all contributions owed during this time period. True and correct copies of the Audit Invoices and audit Reports (social security numbers redacted), dated January 24, 2017 and February 7, 2017 are attached as Exhibit "3."

23. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for an amount equal to the greater of interest on the unpaid contributions as prescribed by section 6621 of the Internal Revenue Code of 1954, 26 U.S.C. §6621, or liquidated damages provided for under the AGREEMENTS.

24. It has been necessary for PLAINTIFFS to engage counsel to bring this action to compel compliance with the AGREEMENTS, and to recover the attorneys' fees and the costs for which EMPLOYER is liable pursuant to the AGREEMENTS and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2).

25. The PLANS have complied with all conditions precedent.

26. EMPLOYER is delinquent in contributions in a further sum, the exact amount of which is unknown to PLAINTIFFS, and PLAINTIFFS will move to amend this complaint when the true amount of the fringe benefit contribution

1 delinquency is determined.

## SECOND CLAIM FOR RELIEF FOR
## SPECIFIC PERFORMANCE FOR SPECIFIC MISSING REPORTS

27. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 25 of their First Claim for Relief, and allege for a Second Claim for Relief for Specific Performance for Missing Reports against EMPLOYER, as follows:

28. This action for specific performance arises and jurisdiction of the court is founded on Section 301 of the Labor-Management Relations Act of 1947 ("LMRA") (29 U.S.C. §185A) and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (29 U.S.C.A §1132).

29. The AGREEMENTS require EMPLOYER to complete and submit Employers Monthly Reports ("REPORTS") stating the amount of contributions owed along with fringe benefit contribution to the PLANS at their place of business in Los Angeles, California, on or before the 25th day of each month following the month during which the hours for which contributions are due were worked or paid for.

30. EMPLOYER has failed to submit REPORTS and contributions for the following months of August 2015 and September 2015.

31. The PLANS have no adequate or speedy remedy at law, as the PLANS are unable to calculate the amount owing.

## THIRD CLAIM FOR RELIEF FOR
## SPECIFIC PERFORMANCE TO CONDUCT AN AUDIT

32. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 31 of its First and Second Claims for Relief and allege for a Third Claim for Relief for Specific Performance

to Conduct an Audit against EMPLOYER and DOES 1 through 10, as follows:

33. The AGREEMENTS provide that the PLANS have the specific authority to examine the EMPLOYER's job cost records, general check registers and check stubs, bank statements and cancelled checks, general ledgers, cash disbursements ledgers, worker compensation insurance reports, financial statements, corporate income tax returns, employee time cards, payroll journals, individual earnings records of all employees, forms W-2, 1099 and 1096 remitted to the U.S. Government, quarterly state tax returns, health and welfare and pension reports for all other trades, cash receipts' journal, copies of all contracts and all material invoices.

34. The PLANS have requested access to EMPLOYER's business records for the purpose of conducting an audit.

35. EMPLOYER has failed and/or refuses to allow the PLANS to complete such an audit.

36. The PLANS have no adequate or speedy remedy at law.

37. It has been necessary for PLAINTIFFS to engage counsel to bring this action to compel compliance with the AGREEMENTS, and to recover the attorneys' fees and the costs for which EMPLOYER is liable pursuant to the AGREEMENTS and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2).

38. PLAINTIFFS has, concurrently with the filing of this complaint, served a copy of same upon the Secretary of Labor and Secretary of the Treasury.

WHEREFORE, PLAINTIFFS pray for judgment as follows:

**FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF FOR DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS**

1. For unpaid contributions in the sum of $11,064.15;
2. For interest and liquidated damages, as provided in the AGREEMENTS;
3. For audit fees in the sum of $630.00;

4.       For a statutory amount equal to the greater of the interest on unpaid contributions which were owing as of the time of the filing of the complaint herein (at the rate presceibed by law), or liquidated damages as provided in the AGREEMENTS, in the amount to be determined.

## FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF FOR
## SPECIFIC PERFORMANCE FOR SPECIFIC MISSING REPORTS

1.       That EMPLOYER be compelled to forthwith submit the REPORTS for the following months along with the appropriate contributions:   August 2015 and September 2015.

## FOR PLAINTIFFS' THIRD CLAIM FOR RELIEF FOR
## SPECIFIC PERFORMANCE TO CONDUCT AN AUDIT

1. That EMPLOYER be compelled to forthwith submit to completion of an audit of EMPLOYER's business records covering the period from July 31, 2015 through the present, by the PLANS' auditors at the premises of EMPLOYER during business hours, at a reasonable time or times, and to allow the auditors to examine and copy the following books, records, papers, documents and reports of EMPLOYER:  all job cost records, general check register and check stubs, bank statements and canceled checks, general ledgers, worker compensation insurance reports, financial statements, cash disbursements ledgers, corporate income tax returns, employee time cards, payroll journals, individual earnings records of all employees, forms W-2, 1099 and 1096 remitted to the U.S. Government, quarterly state tax returns, health and welfare and pension report for all other trades, cash receipts' journal, copies of all contracts, and all material invoices;

///

///

///

## AS TO ALL OF PLAINTIFFS' CLAIMS FOR RELIEF

1. For reasonable attorneys' fees;
2. For audit costs;
3. For costs of this action;
3. For further contributions according to proof; and
4. For such other and further relief as the court deems proper.

Dated: January 22, 2019

DeCARLO & SHANLEY,
a Professional Corporation

By: _____
CASEY JENSEN
Attorneys for Plaintiffs,
CARPENTERS SOUTHWEST
ADMINISTRATIVE CORPORATION
and BOARD OF TRUSTEES FOR THE
CARPENTERS SOUTHWEST TRUSTS